IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHERARD HOPE, # 01612-104, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>WALTER WOODS, *et al.,* )<br>)<br>Defendants. ) | Civil Action No.<br>2:18cv239-MHT-SRW<br>[WO] |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**[1]

This action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), is before the court on an amended complaint filed *pro se* by Plaintiff Sherard Hope, an inmate at the Federal Prison Camp in Montgomery, Alabama ("FPC Montgomery"), when he initiated this case.[2] Doc. 16; *see also* Doc. 2. Hope names as defendants Walter Woods, Warden of FPC Montgomery; Safety Supervisor Tiffany Bailey; HSA Grindle; and Assistant Warden J. Hutchinson. Doc. 16 at 1–5. He alleges that Defendants violated his Eighth Amendment rights by subjecting him to unconstitutional conditions of confinement by acting with deliberate indifference to the respiratory issues potentially

---

[1] References to document numbers are to the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the hard copy of the document presented for filing.

[2] Hope filed this action during his incarceration at the Federal Prison Camp in Montgomery. He was released from custody during the pendency of this case. *See* BOP's website, inmate locator (https://www.bop.gov/inmateloc/).

created for him by the fact that a colony of bats had taken up residence in the roof spaces of his housing unit. He seeks damages and injunctive relief. *Id.* at 4–5.

Defendants filed a special report, supplemental special report, reply briefs, and supporting evidentiary materials (Docs. 23, 32, 41) addressing the claims in the amended complaint. Defendants argue this case is due to be dismissed because, before filing this civil action, Hope failed to exhaust properly an administrative remedy available to him at FPC Montgomery regarding his claims.[3] Doc. 23. Defendants base their exhaustion defense on Hope's failure to comply with the Federal Bureau of Prisons' ("BOP's") internal administrative remedy procedure for its inmates regarding the claims. *Id.*

Upon receipt of Defendants' special report, as supplemented, the court issued orders on July 5, 2018, and August 22, 2018, providing Hope an opportunity to file a response. Docs. 25, 33. These orders directed Hope to address Defendants' arguments that "(i) he has failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ('PLRA') [prior to filing this federal civil action]." Doc. 25 at 1–2. The July 5, 2018 order also advised Hope that his response should be supported by affidavits or other appropriate evidentiary materials. *Id.* at 2–3; *see also* Doc. 33. The order further cautioned Hope that unless "sufficient legal cause" is

---

[3] Defendants also argue this action is moot because a contractor was hired to eliminate the bats' presence in the housing units at FPC Montgomery. Doc. 41 at 3–4. Generally, however, neither resolution of a claim nor a prisoner's transfer to another facility or release from prison moots a claim for monetary damages, *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1362 (11th Cir. 1984), since a claim for monetary damages "looks back in time and is intended to redress a past injury." *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).

2

shown within ten days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a dispositive motion and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." Doc. 25 at 3.

Hope took advantage of the opportunity to file a response to Defendants' special report as supplemented. Docs. 27, 36. In response to Defendants' exhaustion defense, Hope maintains that (1) his claim falls within an "imminent danger" exception to the PLRA; (2) BOP remedies are futile or inadequate; and (3) the BOP's administrative remedy procedure is not readily available at FPC Montgomery because staff have limited the number of grievance forms distributed to inmates and sometimes deny requests for grievance forms. Doc. 27 at 1–4. In response to Defendants' supplemental special report, Hope reiterates his contention that exhaustion of the BOP administrative remedy procedure is futile and that it was also unavailable. Doc. 36.

To support their special reports, Defendants produced institutional records and the declarations of Grzegorz Bitner, Senior Attorney for the BOP at U.S. Penitentiary in Atlanta, Georgia, and Cathy Rogers, Hope's correctional counselor at FPC Montgomery. These evidentiary materials refute Hope's claims that he was impeded in his ability to use or access the BOP's administrative remedy procedure and show that, during the relevant time period, he had access to the administrative remedy. Contrary to Hope's conclusory and unsupported assertions, the evidentiary materials demonstrate that Hope could freely access the grievance procedure at FPC Montgomery. *See* Docs. 23-1; 32-1–32-4.

3

"[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations omitted); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (district court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies"). Therefore, this court will treat Defendants' special reports as a motion to dismiss.

## II. STANDARD OF REVIEW

Section 1997e(a) of the PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Eleventh Circuit has recognized that "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (quoting *Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). Because exhaustion is mandated by the statute, a court has no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998); *see Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012).

Under the PLRA, a federal prisoner cannot bring a *Bivens* action until he has exhausted his available administrative remedies. *See Alexander*, 159 F.3d at 1323–24; *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("[F]ederal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures just as state prisoners must exhaust

4

administrative processes prior to instituting a [42 U.S.C.] § 1983 suit."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

> When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Myles*, 476 F. App'x at 366 (citations and internal quotations omitted). Consequently, a district court

> may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record.

*Trias,* 587 F. App'x at 535. Based on the foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id.* at 534.

Upon review of the amended complaint and Defendants' dispositive motion and supporting evidentiary materials, the court concludes that Defendants' motion to dismiss is due to be granted.

### III. DISCUSSION

Hope challenges the conditions of confinement at FPC Montgomery due to the presence of bats in the ceilings of his housing unit, which he says has subjected him to potential respiratory problems. Defendants maintain that this case should be dismissed because Hope did not exhaust the administrative remedy provided by the BOP for inmates to seek review of any aspect of their confinement before filing a complaint as required by the PLRA. Doc. 23; Doc. 32 at 2–5.

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court in a *Bivens* action. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. "The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards. Indeed, as [the Supreme Court] held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought–monetary damages–

cannot be granted by the administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Hawk*, 159 F.3d at 1325. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016). However, "[a] prisoner need not exhaust remedies if they are not available." *Id.* at 1855 (internal quotation marks omitted). Generally, a remedy is "available" when it has "sufficient power or force to achieve an end,[or is] capable of use for the accomplishment of a purpose[.]" *Booth*, 532 U.S. at 737 (internal quotation marks omitted). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 90–91, 93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing

7

the administrative process simply by waiting until the grievance procedure is no longer available to him. *Id.* at 83–84; *Bryant*, 530 F3d at 1378 (explaining that to exhaust administrative remedies under the PLRA, prisoners must "properly take each step within the administrative process."); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (observing that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

The BOP has established regulations setting forth the procedures a prisoner must follow before seeking relief from a district court. *Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992); *see* 28 C.F.R. § 542.10–.19. Generally, a prisoner must complete a three-step sequential process if the informal resolution procedure—sometimes referred to as a BP-8—fails to resolve the issue. As to the formal administrative remedy procedures, an inmate first must submit a Request for Administrative Remedy on the BP-9 grievance form to the Warden within twenty days of the incident. *See* 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may submit an appeal on the BP-10 form to the Regional Director within twenty days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he may submit an appeal on the BP-11 form to the General Counsel

within thirty days of the Regional Director's response. *Id.*; *see* Doc. 23-1. at 3–5: Doc. 32-1 at 3–4.

With their special report, Defendants produced the Declaration of Grzegorz Bitner, Senior Attorney for the BOP at U.S. Penitentiary in Atlanta, Georgia. Doc. 23-1. Bitner avers that, in his official capacity, he has access to official records maintained by the BOP and is familiar with the administrative remedy for inmates set forth in the BOP Program Statement 1330.18 and 28 C.F.R. part 542, subpart B. *See id.* at 2–6. Bitner states that he is familiar with the BOP computer system—SENTRY—which contains inmate information, including tracking information of administrative remedies filed by inmates. *Id.* at 3. Bitner further says that he has reviewed the SENTRY records for Hope and those records reflect that Hope pursued no administrative remedies regarding the subject matter of his complaint. *Id.* at 6.

Defendants also submitted the Declaration of Cathy Rogers, Hope's correctional counselor at FPC Montgomery. Doc 32-1. Rogers states that as a correctional counselor, she is responsible for the administrative remedy requests of inmates assigned as part of her Unit Team at FPC Montgomery and she was Hope's correctional counselor during his incarceration at the facility. Rogers reviewed BOP records of administrative remedy requests submitted by Hope during his time in BOP custody, and she testifies that those records show that Hope submitted no administrative remedies. Doc 32-1 at 6. Rogers further states:

> Inmates typically begin the administrative remedy process at FPC Montgomery by requesting a BP-8 or BP-9 from me or their respective Correctional Counselor. Once an inmate requests a BP 8 or 9 from me or

9

> their Correctional Counselor, I log it into my administrative remedy logbook. My logbook [ ] tracks the inmate's name, register number, date of issue of the administrative remedy, the date of the attempted informal resolution, the response date, the actual administrative remedy tracking number and reason for [f]iling.
>
> Plaintiff has never requested a BP-8 or BP-9 from me for the purposes of making claims related to bats or any other issues. I have never denied Plaintiff or any inmate at any time their request for a BP-8 or BP-9 for any issue. If a Correctional Counselor denies an administrative remedy to an inmate, the inmate may ask the Correctional Counselor's supervisor, the Unit Manager, for an administrative remedy. Additionally, an inmate may ask any staff member, including any member of the Executive Staff, including the Warden, at FPC Montgomery, for an administrative remedy. Executive Staff, including the Warden, typically stand "main line"[4] and if made aware of the denial of an administrative remedy, could ensure compliance with BOP policy by directing the offending staff member to issue the administrative remedy. Lastly, if all the staff at a BOP institution denied an inmate all access to administrative remedies, the inmate could and should write and file an administrative remedy with their respective BOP Regional Office.
>
> Since December 1, 2017, through August 1, 2018, inmates at FPC Montgomery have filed 62 administrative remedies. None of these 62 administrative remedies concern bats. During this time period, Plaintiff has filed zero administrative remedies. As stated above, I have never denied Plaintiff access to the administrative remedy process at FPC Montgomery. *See* [Doc. 32-3]. Additionally, during this time period inmates at FPC Montgomery have appealed to [the] Central Office through the administrative remedy process 36 times. *See* [Doc. 32-4].
>
> The Warden, or any other staff member at FPC Montgomery, have never instructed me, either directly or indirectly, to not issue administrative remedies to FPC Montgomery inmates related to the issue of bats or any other issues.

Doc 32-1 at 4–6 (paragraph numbers omitted; footnote renumbered).

---

[4] "'Main line' refers to the time during breakfast, lunch, and dinner when members of the Executive Staff, and other members of non-custody staff, stand at the entrance (or inside the cafeteria) and are available to answer any questions inmates may have."  Doc. 32-1 at 4 n.1.

The record reflects that Hope did not properly employ the BOP's administrative remedy process regarding the claims in his amended complaint. He skipped the process altogether. By skipping the process, he failed to exhaust his administrative remedies before filing this case. *See Woodford*, 548 U.S. at 90–91. Hope claims, however, that the process was unavailable to him because (1) forms for filing grievances are not readily available to inmates at FPC Montgomery and prison staff sometimes deny inmate requests for the forms, and (2) numerous inmates made a formal grievance to the Warden at FPC Montgomery regarding the bat-infestation problem and the Warden asked the inmates to give him time to resolve the problem, including the clean-up of residual effects from the bats' presence, before the inmates filed any actions. Doc. 27 at 2–4, 8–9. According to Hope, because he relied on the Warden's assurances that inmates' concerns would be addressed, the administrative remedy process was unavailable and inadequate.[5] *Id*. at 8–9.

The Supreme Court has delineated three circumstances that may render administrative remedies unavailable:

> (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes . . . incapable of use . . . [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking

---

[5] Hope also contends that he should be excused from the PLRA's exhaustion requirement due to "imminent danger" of serious injury. The "imminent danger" exception is available to inmates who have previously received three strikes under the PLRA and therefore are no longer permitted to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g). The "imminent danger" exception, however, does not excuse the exhaustion requirement under the PLRA. *See McAlphin v. Toney*, 375 F.3d 753 (8th Cir. 2004) (refusing to recognize "imminent danger" exception to PLRA's exhaustion requirement and holding inmate who was allowed to proceed in forma pauperis under imminent danger exception to "three strikes" restriction was still required to meet exhaustion requirement of PLRA); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (explaining that courts are not to read futility or other exceptions into the § 1997e(a) exhaustion requirement).

11

advantage of a grievance process through machination, misrepresentation, or intimidation."

*Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quoting *Ross*, 136 S.Ct. at 1859–60).

The record establishes that the BOP has an administrative remedy program available to inmates and that Hope had this administrative remedy available to him during his confinement at FPC Montgomery. Hope's assertions that the administrative remedy process was unavailable—(1) because the Warden at FPC Montgomery indicated he would correct the bat-infestation problem but then failed to act, and (2) because the necessary grievance forms are not readily available and staff sometimes deny inmate requests for the forms—are insufficient. Hope's assertions are vague and conclusory and without factual detail, support, or context; thus, they fail to demonstrate that the administrative remedy procedure was not available to him. For instance, Hope does not state that he *personally* sought a BP-8, BP-9, or any other grievance form from his correctional counselor or any other prison staff at FPC Montgomery to initiate the administrative remedy process regarding the bat-infestation issue. Nor does he state forthrightly that prison staff refused an actual request *from him* that he be provided with a grievance form. Even accepting Hope's allegations as true, Hope fails to show that the administrative remedy process was unavailable to him.

Here, the evidentiary record demonstrates that, despite Hope's contentions to the contrary, Hope had an administrative remedy available to him during his confinement at FPC Montgomery. But Hope failed to exhaust the three-tiered administrative remedy

process set forth at 28 C.F.R. §§ 542.10-.19 regarding his claims, filing no request for an administrative remedy regarding the subject matter of this action. Hope also has failed to demonstrate that the administrative process was otherwise unavailable to him under the circumstances set forth in *Ross*, 136 S.Ct. at 1859–60. Further, the record shows that the administrative remedy is no longer available to Hope because he is no longer incarcerated. Dismissal with prejudice is therefore appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that "[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (holding that inmate's "federal lawsuits [were] properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion to dismiss (Docs. 23, 32) be GRANTED to the extent that Defendants seek dismissal of this case due to Plaintiff's failure to exhaust properly an administrative remedy available to him during his confinement at FPC Montgomery before initiating this civil action.

2. This case be DISMISSED with prejudice under 42 U.S.C. § 1997e(a) for Plaintiff's failure to exhaust properly an administrative remedy previously available to him at FPC Montgomery.

3. No costs be taxed.

It is further

ORDERED that the parties shall file any objections to this Recommendation by February 18, 2021. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982*). See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE on this the 3rd day of February, 2021.

/s/ Susan Russ Walker  
Susan Russ Walker  
United States Magistrate Judge